UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DAMON L. NOLAND, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 14-3060-CV-S-BCW-P |
| vs. ) | |
| ) | |
| IAN WALLACE, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner, a convicted state prisoner currently confined at the Southeast Correctional Center in Charleston, Missouri, has filed *pro se* a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2009 conviction for one count of forcible rape and 2010 sentence for life imprisonment without parole for 30 years, which was entered in the Circuit Court of Christian County, Missouri. Petitioner's conviction and sentence was affirmed on direct appeal. *State v. Noland*, SD30328. Petitioner filed a motion for post-conviction relief pursuant to Mo. Sup. Ct. R. 29.15, the denial of which was affirmed on appeal thereof. *Noland v. State*, 413 S.W.3d 684 (Mo. Ct. App. 2013).

Petitioner raises five (5) grounds for relief: (1) the trial court erred in giving a faulty jury instruction – Instruction No. 5; (2) his trial counsel was ineffective for failing to object to the admission of videotaped statements of a child witness because of an alleged Confrontation Clause violation; (3) his trial counsel was ineffective for failing to properly inform him about the range of punishment, thereby causing petitioner not to accept the state's plea offer; (4) the trial court erred in allowing the jury, upon request, to view a videotaped Child Advocacy Center ("CAC") interview of the alleged victim during deliberation; and (5) the trial court erred when it

overruled his motion for acquittal at the end of the evidence, when it accepted the jury's verdict, and when it sentenced him. Respondent contends that Grounds 1-2 and part of Ground 5 are procedurally defaulted and that the remaining part of Ground 5 is without merit. Respondent also contends that Grounds 3-4 are without merit.

## FACTUAL BACKGROUND

In affirming the judgment of conviction and sentence, the Missouri Court of Appeals, Southern District, explained the following:

> [. . .] [O]n May 20, 2008, Nicole Schrock ("Ms. Schrock"), an investigator with the Children's Division of the Missouri Department of Social Services ("the Children's Division"), received a hotline call regarding K.W., who was ten years old at the time. That same day, Ms. Schrock went to Ozark West Elementary School to interview K.W. K.W. told Ms. Schrock that [petitioner], who was forty-two years old at the time and living in Nixa with K.W. and her mother ("Mother"), "had been doing bad things to her" and revealed that [petitioner] "went inside [her]." Concerning [petitioner] going "inside her," K.W. said that it happened twice since April 19, 2008: once in her bedroom and once in the bathroom. After interviewing K.W., Ms. Schrock interviewed Mother at her home to discuss the allegations. Mother told Ms. Schrock that previous Sunday, May 18, 2008, K.W. approached her and told her that earlier that morning [petitioner] had entered her room, rubbed baby oil on himself, and "stuck his private in hers." Following her interview with K.W., Ms. Schrock arranged for K.W. to be interviewed at the Child Advocacy Center ("the CAC") in Springfield.
>
> On May 22, 2008, Micki Lane ("Ms. Lane"), the CAC children services coordinator, conducted a forensic interview of K.W. During the interview, K.W. told Ms. Lane that [petitioner] "did something bad to [her]." She recalled the last time [petitioner] did something "bad" to her was the Sunday prior to the interview, inside the trailer where K.W. and her family lived. K.W. reported that while Mother was at the gas station buying cigarettes, [petitioner] ordered her to go into the bathroom, followed her inside and closed the door. [Petitioner] told K.W. to sit on top of the washing machine located inside the bathroom and had her pull her pants down and spread her legs. [Petitioner], who was standing facing K.W., then applied baby oil to his penis and K.W. said he "put his private into [her] private." K.W. related [petitioner] did not touch her anywhere else. When Ms.

2

> Lane asked K.W. if she "ever" told [petitioner] to stop, K.W. said she told him to stop but he refused. K.W. said that something similar had happened on at least two prior occasions – once in [petitioner's] own bathroom in the trailer and once in [petitioner's] bedroom.
>
> [Petitioner] was eventually charged, via felony information, with one count of forcible rape for allegedly having sexual intercourse with K.W. by means of forcible compulsion. A jury trial was held on November 2-3, 2009. At trial K.W. testified although she was never asked specifically whether the facts underlying the charged offense were true and she did not testify about what precisely had happened with regard to the incident in question. At the close of evidence, the trial court denied [petitioner's] motion for judgment of acquittal. During its deliberations, the jury requested all of the exhibits, including Exhibit C, the DVD of K.W.'s interview at the CAC with Ms. Lane. Overruling the objection of [petitioner's] counsel, the judge sent all of the exhibits to the jury, including a DVD player and monitor so the jury could watch the recorded CAC interview of K.W. for a second time. Following deliberations, the jury found [petitioner] guilty of forcible rape and he was sentenced to life imprisonment.

Respondent's Exhibit F, pp. 1-4 (footnotes omitted).

Before the state court findings may be set aside, a federal court must conclude that the state court findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), *cert. denied*, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1) (2003).[1] Because the state court findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

3

## GROUNDS 1 AND 2 -- PROCEDURALLY DEFAULTED

In Ground 1, petitioner first alleges that the trial court lacked jurisdiction to sentence him to life imprisonment because jury instruction No. 5 was defective in that it did not contain an element of the offense regarding the age of the victim. Doc. No. 1, p. 6. Respondent argues that petitioner procedurally defaulted Ground 1 by failing to raise it on direct appeal or during post-conviction relief. Doc. No. 11, pp. 7-9. Apparently, petitioner contends that his Rule 29.15 post-conviction counsel's ineffectiveness caused his procedural default by not raising a claim that direct appeal counsel was ineffective for not raising the claim about the trial court's alleged lack of jurisdiction because of the faulty instruction. Doc. No. 1, p. 6. In Ground 2, petitioner alleges his trial counsel was ineffective for failing to object to the admission of videotaped statements of a child witness because of an alleged Confrontation Clause violation. Doc. No. 1, p. 6. Respondent argues that petitioner procedurally defaulted Ground 2 by failing to raise it in his original or amended Rule 29.15 motion for post-conviction relief. Doc. No. 11, pp. 9-11.

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." *Sloan v. Delo*, 54 F.3d 1371, 1381 (8th Cir. 1995). "In order to present a habeas claim to the state court, a prisoner must 'fairly represent' not only the facts, but also the substance of his federal habeas corpus claim . . . . presenting a claim that is merely similar to the federal habeas corpus claim is not sufficient to satisfy the fairly presented requirement." *Barrett v. Acevedo*, 169 F.3d 1155, 1161-62 (8th Cir. 1999). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is procedural default." *Sloan*, 54 F.3d at 1381.

A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violated of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To satisfy the "cause" requirement, petitioner must show that an "external" impediment prevented him from presenting his claim to the state court in a procedurally proper manner. *Id*. at 753.

As an exception for establishing cause, the Supreme Court has held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). Under this narrow exception, petitioner must demonstrate that the post-conviction counsel was also ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 688 (1984) (holding that, in order to succeed on a claim for ineffective assistance of counsel, petitioner must be able to show that his attorney's performance fell below an objective standard of reasonableness and that the deficient performance actually prejudiced him). Thus, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, at 1318.

Because Ground 1 is a claim of trial court error, petitioner apparently asserts that post-conviction relief counsel was ineffective for failing to allege ineffectiveness of direct appeal counsel for failing to bring the claim that the trial court lacked jurisdiction because the jury instruction was fatally defective. Doc. No. 1, p. 6. Initially, the rule of *Martinez* only extends to claims which may be brought, for the first time, in post-conviction relief, and complaints about trial court error regarding jury instructions must be brought on direct appeal. *McNeal v. State*,

5

Case 6:14-cv-03060-BCW   Document 19   Filed 12/12/14   Page 5 of 15

412 S.W.3d 886 (Mo. 2013). *Martinez* does not extend to excuse petitioner's procedural default of Ground 1. *Dansby v. Hobbs*, 766 F. 3d 809, 833-34 (8th Cir. 2014). If petitioner is claiming that trial counsel was ineffective for failing to argue that the trial court was without jurisdiction because a defective jury instruction was used (petitioner raised a similar claim in his Rule 29.15 motion, Respondent's Exhibit G, p. 16), such claim is meritless because errors in the jury instructions are not jurisdictional under Missouri law. *See Stanton v. Hart*, 356 S.W.3d 330, 333-34 (Mo. Ct. App. 2011)(discussing the categorical differences). Petitioner's post-conviction counsel was not ineffective for failing to bring a meritless claim. *Jones v. Barnes*, 463 U.S. 745, 745 (1983). Because the claim that the trial court lacked jurisdiction based on a defective jury instruction is procedurally barred in that it was not raised on direct appeal or as a claim of trial court error on post-conviction relief and because petitioner's procedural default cannot be excused under the rule in *Martinez,* Ground 1 will be denied.

As to Ground 2, petitioner claims that his procedural default thereof was caused by post-conviction motion counsel failing properly to raise trial counsel's ineffectiveness for failing to object to the admission of videotaped statements of a child witness because of an alleged confrontation clause violation. Although a claim of ineffective assistance of trial counsel was brought for an alleged hearsay violation regarding the child witness in petitioner's amended Rule 29.15 motion and was decided against petitioner by the Rule 29.15 motion court[2], this Court must determine whether post-conviction counsel was ineffective for deciding not to bring a confrontation claim in petitioner's amended motion for post-conviction relief, whether the underlying ineffective assistance of trial counsel claim is "substantial," and whether petitioner

---

2 In the Rule 29.15 hearing, trial counsel testified that he decided not to object further to the alleged hearsay testimony at trial because he thought it would bring more attention to it than if he let it "slide through" as a "damage control" or trial strategy decision. Respondent's Exhibit H, pp. 20-23.

6

was prejudiced. *Martinez*, 132 S.Ct. at 1312. Given, however, that the victim, who made videotaped statements and was deposed by petitioner's trial counsel about the videotaped statements, was available and actually testified at trial and was cross-examined by petitioner's trial attorney, there was no confrontation clause violation. Doc. No. 1, pp. 12-13; Respondent's Exhibit A, pp. 64-65.

As to a second video tape concerning a different child witness that petitioner mentions (Doc. No. 1, pp. 12-14), trial counsel is presumed to have acted reasonably *per Strickland*, and nothing in the record contradicts that presumption. Post-conviction relief counsel would have reviewed the record before filing the amended motion for post-conviction relief, Respondent's Exhibit B, pp. 15-28, and was familiar enough with the case to participate and present arguments on petitioner's behalf at the hearing. Respondent's Exhibit H, pp. 31-40. Given the Rule 29.15 hearing testimony of trial counsel concerning the alleged "hearsay" testimony of the videotaped statements of the victim, petitioner's post-conviction relief counsel acted reasonably in not raising a claim about the videotaped of the second child. Because the underlying claim is meritless, the subsequent claim is not substantial because petitioner could not have been prejudiced by counsel failing to bring a meritless claim. Using the standard set forth in *Martinez*, the petitioner failed to make his showing that the underlying claim in Ground 2 is "substantial"; thus, it does not fit within the narrow *Martinez* exception. *Martinez*, 123 S. Ct. at 1318.

Petitioner has also failed to show that a fundamental miscarriage of justice will result if his defaulted Grounds 1 and 2 are not considered. *See Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006) (petitioner must present new evidence that affirmatively demonstrates that he is actually innocent of the crime for which he was convicted in order to fit within the fundamental

7

miscarriage of justice exception), *cert. denied*, 459 U.S. 1036 (2006). As a result, petitioner's Grounds 1 and 2 are procedurally defaulted and will be denied.

## GROUND 3 -- INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In Ground 3, petitioner asserts trial counsel was constitutionally ineffective for allegedly misinforming petitioner about the range of punishment. Doc. 1, p. 6. Petitioner raised this argument before the Missouri Court of Appeals, which held:

> This rape charge carried a mandatory life sentence, unbeknownst to Counsel who told [petitioner] the punishment range was 10 to 30 years or life, without probation or parole.
>
> [Petitioner] rejected all plea offers and insisted that he was innocent. As Counsel later explained at the PCR hearing:
>
> [Transcript of questioning during PCR hearing has been omitted]
>
> ….
>
> The foregoing supports the PCR court's finding that [petitioner] "did not receive the correct range of punishment" but "demonstrate[d] no reasonable probably he would have accepted the plea offer."
>
> > It is in the transcript that [petitioner] did not want to plead but to proceed to trial. (see trial transcript p. 48-51) Only now, after he has been convicted does he states [sic] he would have pled, but his actions and words at the time of trial indicated otherwise.
>
> Later, perhaps for emphasis, the court reiterated that Noland's PCR testimony "that he would have pleaded guilty is not credible."
>
> We defer to these credibility determinations. The PCR court did not clearly err in finding that [petitioner] proved "no reasonable probability he would have accepted the plea offer." This, of itself, forecloses relief, *Lafler*, 132 S. Ct. at 1385.
>
> Further, the PCR court found that judicial acceptance of a 10-year plea deal was "highly unlikely":
>
> > This Court has the ability to reject plea agreements. In fact, this Court rejected an agreement in this case between the

> State and [petitioner] to a 15 years [sic] sentence on a
> forcible rape charge. It is highly unlikely, under the facts of
> this case, that this court would have accepted a plea
> agreement that called for a 10 year sentence on a first degree
> child molestation. [Petitioner] has failed to prove that there
> was reasonable probability the plea agreement would have
> been accepted by this Court. He did, was convicted and
> sentenced to life, and lost his direct appeal. This refers to a
> 15-year deal reached by the parties during the PCR case but
> rejected by the motions court.
>
> We give special deference here – the PRC judge also was the trial judge.
> See *Joos v. State*, 277 S.W.3d 802, 804 (Mo. App. 2009). This no-prejudice
> finding, not clearly erroneous, justified affirmance independently. *Lafler*,
> 132 S. Ct. at 1385.

*Noland v. State*, 413 S.W. 3d at 685-87 (footnotes omitted).

The Supreme Court has held that, in order for petitioner successfully to assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. *Strickland v. Washington*, 466 U.S. at 688. This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in *Strickland*." *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999), *cert. denied*, 530 U.S. 1265 (2000).

The Missouri courts applied the *Strickland* standard of the review and found no element of prejudice as a result of potentially subpar counsel. Additionally, the Missouri court's factual determinations are supported by the record. Petitioner's assertion during post-conviction relief that he would have accepted the plea offer was found not credible by the Missouri courts. Both the Rule 29.15 trial court and the Rule 29.15 appellate court found that there was not a reasonable probability that the plea offer would have been accepted. Respondent's Exhibit M,

9

pp. 5-6. Petitioner's bare allegation that, but for counsel, petitioner would have accepted the plea deal is not sufficient to overcome the factual determinations of the state courts. *See Hill v. Lockhart*, 474 U.S. 52, 60 (1985). Because petitioner has failed to demonstrate that the state court determinations were not based upon an "unreasonable determination of the facts in light of the evidence or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground 3 will be denied as to petitioner's claim that counsel was ineffective for misadvising him on the range of punishment.

### GROUND 4 -- TRIAL COURT ERROR

In Ground 4, petitioner asserts that the trial court committed error by allowing the jury to view a videotaped CAC interview of the alleged victim during deliberation. Petitioner raised this argument before the Missouri Court of Appeals, which held:

> Generally, "once 'an exhibit has been properly admitted into evidence, it is within the sound discretion of the trial court whether the exhibit will be sent to the jury during deliberations' and we will overturn the lower court's decision only if we determine that the trial court abused that discretion." *State v. Talley*, 258 S.W.3d 899, 911 (Mo. App. 2008) (quoting *State v. Skillicorn*, 944 S.W.2d 877, 896 (Mo. banc 1997), *overruled on other grounds by Joy v. Morrison*, 254 S.W.3d 885, 888-89 (Mo. banc 2008)). "Such an abuse of discretion only occurs when the decision to exclude or allow an exhibit into the jury room for deliberations 'was clearly against reason and resulted in an injustice to defendant.'" *Id*. (quoting *State v. Roberts*, 948 S.W.2d 577, 596-97 (Mo. banc 1997)).
>
> [Petitioner] is correct to point out that "testimonial" exhibits generally cannot be provided to the jury during its deliberations "for the reason that such exhibits tend to unduly emphasize some of the testimony, raising the possibility the jury would afford it undue weight." *State v. Partain*, 310 S.W.3d 765, 768 (Mo.App. 2010). [Petitioner] argues that Exhibit C was "testimonial in nature" based on the standards established by the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36 (2004), and *Davis v. Washington*, 547 U.S. 813 (2006), thus, the trial court should have precluded the jury from viewing the DVD during its deliberations. However in *Partain* and *State v. Parker*, 208 S.W.3d 311, 338-39 (Mo.App. 2006), the trial court permitted the jury to view a recording of the victim's interview with the CAC while it deliberated, and in both cases the Eastern

10

> and Southern Districts of this Court held that the trial court acted within its discretion in permitting this. *Partain*, 310 S.W.3d at 768; *Parker*, 208 S.W.3d at 339. Both decisions note that the recorded CAC interviews were "distinct" and not wholly duplicative of the victim's trial testimony such that the trial court did not abuse its discretion in allowing the jury access to the tapes. *Partain*, 310 S.W. 3d at 768; *Parker*, 208 S.W.3d at 339. Similarly, in the case here, K.W.'s recollections from the CAC interview were entirely distinct and non-duplicative of her trial testimony. In her CAC interview, she described the abuse incident in specific detail, while at trial she did not go into any details about the charged incident nor was she extensively cross-examined about the incident. In light of the *Partain* and *Parker* decisions, which we believe were correctly decided, [petitioner] has failed to prove the trial court abused its discretion in allowing the jury to view Exhibit C during its deliberation.

Respondent's Exhibit F, pp. 9-11 (footnote omitted).

If this claim were directed toward the general admissibility of the evidence at issue, a stricter standard would apply. "The exclusion [or admission] of [evidence] based on state evidentiary rules results in the denial of due process only if there was an impropriety so egregious that it made the entire proceeding fundamentally unfair." *Skillicorn v. Luebbers*, 475 F. 3d 965, 972 (8th Cir. 2007) (citation omitted), *cert. denied sub nom. Skillicorn v. Roper*, 552 U.S. 923 (2007). "To meet this burden, a habeas petitioner must show that 'absent the alleged impropriety the verdict probably would have been different.'" *Id.* (quoting *Anderson v. Geoke*, 44 F. 3d 675, 679 (8th Cir. 1995). Here, the exhibit at issue already had been properly admitted into evidence; thus, petitioner's bare assertion that the trial court should not have permitted the video to be viewed by the jury for a second time during jury deliberations is insufficient to show that the outcome would have been different.

Petitioner has not demonstrated that the state court determinations were based upon an "unreasonable determination of the facts in light of the evidence or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2). Additionally, petitioner contends post-conviction motion counsel was ineffective for failing to allege petitioner's direct-appeal counsel

11

was ineffective for failing to "fully brief" a claim that petitioner admits was presented. Doc. 1, p 27. The only basis for this claim appears to be that petitioner's counsel lost this claim. Because the underlying claim is meritless, as previously discussed, and because the "fully briefed" claim is meritless, all claims in Ground 4 will be denied.

## **GROUND 5 -- TRIAL COURT ERROR**

Finally, in Ground 5, petitioner asserts that the trial court committed error when it overruled his motion for acquittal at the end of evidence, when it accepted the jury's verdict, and when it sentenced petitioner. Petitioner raised this claim before the Missouri Court of Appeals, which held:

> "We review the denial of a motion for acquittal to determine if the State adduced sufficient evidence to make a submissible case." *State v. Watson*, 290 S.W.3d 103, 105 (Mo.App. 2009) (quoting *State v. Davis*, 219 S.W.3d 863, 866 (Mo.App. 2007)). The standard of review is whether there was sufficient evidence to allow a reasonable juror to find the defendant guilty beyond a reasonable doubt. *Id*. We must review the evidence in the light most favorable to the judgment, disregard any contrary evidence, and grant the State all reasonable inferences therefrom. *Id*. "We defer to the … jury to assess the credibility of witnesses and weight and value of their testimony." *Id*. (quoting *Davis*, 219 S.W.3d at 866).
>
> With regard to the charge involved in this case, "[a] person commits the crime of forcible rape if such person has sexual intercourse with another person by the use of forcible compulsion." § 566.030.1. "Forcible compulsion" is statutorily defined as either "(a) Physical force that overcomes a reasonable resistance; or (b) A threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping such person or another person." § 556.061(12). "Physical force as set out in the statute simply means force applied to the body; "[t]he victim need not have physically resisted before the involved force is first used." *State v. Lopez-McCurdy*, 266 S.W.3d 874, 877 (Mo.App. 2008). "'Reasonable resistance' is that which is suitable under the circumstances [, however,] the law does not require or expect utmost resistance to a sexual assault when it appears that such resistance would be futile or provoke a more serious injury." *State v. Vandevere*, 175 S.W.3d 107, 109 (Mo. banc 2005). In determining if the force used is enough to overcome reasonable resistance, "the court does not look to any single fact but to the totality of the circumstance." *State v. Niedrstadt*, 66 S.W.3d 12, 15 (Mo. banc 2002).

> Among the factors we consider are "whether violence or threats precede the . . . act; the relative ages of the victim and accused; the atmosphere and setting of the incidence; the extent to which the accused was in a position of authority, dominion, [or] control over the victim; and whether the victim was under duress." *Id*.
>
> Applying the relevant factors to the case at bar, this Court finds the State put forth enough evidence for a jury to find beyond a reasonable doubt that [petitioner] used sufficient force to overcome K.W.'s reasonable resistance such that it was proven that [petitioner] had sexual intercourse with K.W. by forcible compulsion. As noted, [petitioner] was middle-aged at the time of the rape while K.W. was only ten years old. As the ex-boyfriend of Mother, [petitioner] was in a position of authority over K.W. By ordering K.W. inside the bathroom and then shutting the door, [petitioner] clearly exerted control over K.W. [Petitioner] then rendered K.W. even more helpless and vulnerable by having her sit on top of the washing machine while he faced her and penetrated her. Finally, when K.W. attempted to resist by telling [petitioner] to stop, he would not. Considering all these circumstances, especially the youth and vulnerability of K.W. relative to [petitioner's] position of strength and authority, it would have been futile for K.W. to put up any more resistance than she did. *See Vandevere*, 175 S.W.3d at 109–110.
>
> Further, [petitioner] argues that during the CAC interview, K.W. did not say that she told [petitioner] to "stop" *specifically* during the incident that was the subject of the charge. Rather, [petitioner] argues that because Ms. Lane "asked K.W. if she 'ever' told him not to do it or to stop, the evidence does not show that this happened during the charged offense since the interview also referred to several prior uncharged acts." We disagree with this interpretation of the facts for it is clear from the CAC interview that Ms. Lane prefaced her question with, "[o]n Sunday, when it happened . . . ," obviously referring to the May 18, 2008, episode that K.W. had just been describing.

Respondent's Exhibit F, pp. 7-8 (emphasis in original).

The Missouri Court of Appeals applied what is, in essence, the federal standard. Where a petitioner asserts there was insufficient evidence to support a conviction, a federal court's scope of review is "extremely limited." *Sera v. Norris*, 400 F.3d 538, 543 (8th Cir. 2005) (quoting *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003)). A federal habeas court cannot overturn a state court decision regarding sufficiency of the evidence simply because it does not

13

agree with the state court; the federal court may only overturn the decision if the state court decision was "objectively unreasonable." *Cavazos v. Smith*, 132 S. Ct. 2, 3 (2011). Viewing the evidence in the light most favorable to the prosecution, a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Here, petitioner only asserts that there was no evidence of force, despite the findings of the jury and the Missouri Court of Appeals that there was enough evidence presented of sufficient force to overcome the victim's reasonable resistance. Because the state court determinations were not based upon an "unreasonable determination of the facts in light of the evidence or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground 5 will be denied.

Petitioner alleges that his claim was denied on appeal because he received ineffective assistance of appellate counsel for failing to "fully brief" the claim asserting that there was no proof of force, although the claim was presented to the court. He alleges also that post-conviction relief counsel was ineffective for failing to raise the claim of ineffective assistance of appellate counsel. Again, petitioner apparently bases this claim on the fact that the claim, as presented to the state courts, was denied.

As for the remaining portion of Ground 5, regarding petitioner's claims that the trial court erred in accepting the jury's verdict and sentencing petitioner, petitioner has presented no reason for his procedural default. Although petitioner raised a portion of Ground 5 on direct appeal, he failed to raise any claims about the remaining portion of Ground 5 in his Rule 29.15 motion. As such, the remaining claims in Ground 5 are procedurally defaulted. *Sweet v. Delo*, 1254 F.3d 1144, 1149 (8th Cir. 1997) (recognizing that failure to present claims in the Missouri Courts at

any stage of direct appeal or post-conviction proceedings is a procedural default), *cert. denied*, 523 U.S. 1010 (1998). Thus, all portions of Ground 5 will be denied.

## A CERTIFICATE OF APPEALABILITY WILL BE DENIED

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. *See* 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied; and

(2) this case is dismissed with prejudice.

/s/ Brian C. Wimes
BRIAN C. WIMES
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: December 12, 2014.